ELEANOR LAWRENCE *versus* LORENZO D. COOKE.

Where the defendant told the plaintiff he was not able to marry her then, but promised her he would marry her within four years ; it not appearing that the parties understood that the promise was not to be performed within one year, such promise is not within the statute of frauds.

In the trial of an action for the breach of a promise of marriage, an instruction to the jury that evidence in regard to the defendant's property was admissible, for the purpose of showing, *inter alia*, " the injury to the plaintiff's affections, if any, and the mortification and pain resulting from the breach," is unexceptionable.

The instruction that, if they could find from the testimony in the case any unjust imputation upon the plaintiff's character, they might consider it, and measure these elements as nearly as they could in dollars and cents, is also unobjectionable, whether there was or was not any evidence upon which to predicate it.

In such a case, the plaintiff is entitled to such damages as would place her in as good a condition, pecuniarily, as she would have been in if the contract had been fulfilled.

In the trial of such a case, the plaintiff's testimony, as to what declarations the defendant's mother made to the plaintiff, in the absence of the defendant, and not communicated to him, is not admissible, either as tending to prove the alleged promise on the part of the defendant or that on the part of the plaintiff.

On Exceptions.

Assumpsit for breach of promise of marriage.

Writ dated January 30, 1866.

The plaintiff being a witness, was asked by her counsel — what, if anything, was said to the witness (plaintiff) by Mrs. Cook, defendant's mother, in relation to the plaintiff's future connection with the family. It not being claimed that the remark inquired about was made in the presence of the defendant or communicated to him, his counsel objected to the question and answer; but the objection was overruled by the presiding Judge, and the plaintiff answered — I called at Mrs. Cooke's with a friend. And, after Mrs. Cooke spoke of her husband's being ill, she added that she, (Mrs. Cooke,) could leave her husband with the plaintiff after she (Mrs. Cooke) was gone, feeling that he would be in good hands; and that she would give plaintiff all her property.

The plaintiff also testified that, in the winter of 1858, she met the defendant at the house of one of her friends, and told him he had been with her so long she had considered herself engaged, and thought she ought to know something more definite. Defendant said he was not able to marry then; but, if he were to be married the next day, he would marry her. Met him again in two weeks, one Sunday evening, when he carried her home; he manifested much love and affection, but she could not receive it unless he gave her something more definite, — unless he fixed upon a time for marriage, that she might have something definite to look forward to. He said he was not able to marry then, but promised to marry her within four years.

The defendant requested the Court to instruct the jury

that, if the only promise proved, was a promise to marry within four years, such a promise was within the statute of frauds and must be in writing; but the Court declined to give the instruction, and ruled that it was not necessary that such a promise, or such a promise as is set out in the second count in the writ, should be in writing, and that it was not within the statute.

On the question of damages, the presiding Judge instructed the jury in substance, that, if they found for the plaintiff, the rule in this case as in other cases is, that the plaintiff is entitled to such damages as will place her in as good condition as she would have been in if the contract had been fulfilled; but while in most cases of contract there is a rule for computation of damages, in this there is no such rule. There is no rule by which damages can be computed, but the jury must exercise their own judgment and good sense, not capriciously, but in the exercise of a sound discretion, and give the plaintiff just such damages as she has sustained by reason of the non-fulfilment of the contract by the defendant. That the testimony in regard to the property of the defendant was not admitted for the purpose of showing his ability to pay, but for the purpose of showing the standing and position in society she would have had if the promise had been fulfilled, the injury to her affections, if any, the mortification and pain of mind resulting from the breach, and, if they could find, from the testimony in the case, any unjust imputation upon her character, they would consider this also, and measure these elements as nearly as they could in dollars and cents, and that would be the amount of damages to be allowed.

The verdict was for the plaintiff, and the defendant alleged exceptions.

*Shepley & Strout*, for the defendant.

I. Illegal testimony was admitted.

*a.* The conversation of plaintiff with defendant's mother ought not to have been admitted.

Defendant's promise cannot be proved by the statement of the opinions of others, or their declarations not made in his presence or hearing.

II. The Court should have given the instructions requested by defendant's counsel. The promise was not to be performed within one year, and therefore void by statute of frauds.

The only promise proved, was a promise to marry within four years.

This within the statute. *Derby* v. *Phelps*, 2 N. H., 515; 2 Parsons on Contracts, 64.

The result of the cases upon this point is, that when the verbal contract does not certainly provide that it shall or shall not be performed within one year, it is to be explained and have effect according to the understanding of the parties at the time of making it. *Fenton* v. *Emblers*, 3 Burr., 1278; *Boydell* v. *Drummond*, 11 East, 142; *Linscott* v. *McIntire*, 15 Maine, 201; *Herrin* v. *Butters*, 20 Maine, 119; *Peters* v. *Westborough*, 19 Pick., 364.

It is apparent that neither of these parties at the time contemplated a marriage within one year.

Plaintiff says she "insisted a time should be fixed upon for the marriage, that I might have something definite to look forward to. He said he was not able to marry then, but promised to marry me within four years. I gave him to understand that was satisfactory to me."

She then understood he was not "able" to marry her'— that they must wait until his ability to support a family had been increased by his business—that this could not be expected within a year, for he claimed four years, or nearly that time for it. She was satisfied to allow him that time, and have that time fixed "as something definite to look forward to."

If either then had been asked if they were to be married within one year, is it not certain from the evidence that each would have replied they were not?

Lawrence *v.* Cooke.

In the contemplation of both parties, then, this was not a contract to be performed in one year.

III. The instructions given were erroneous.

*a.* Respecting the purpose for which testimony with regard to property was admitted. "That among other things it was admitted for the purpose of showing * * * the injury to her affections, if any, the mortification and pain of mind resulting from the breach."

The amount of property of the defendant could have no such effect or tendency. The jury were left to infer such injuries merely from proof of property; were not by instructions required to find as facts proved, whether her affections had been injured, whether she had suffered mortification and pain of mind. They were authorized to infer all this from proof of property.

*b.* Were erroneous in this, "if they could find from the testimony in the case any unjust imputation upon her character, they would consider this also, * * * and measure these elements as nearly as they could in dollars and cents."

This instruction leaves the jury to find, if they possibly could do so from the testimony, "any unjust imputation," without requiring them to find whether the plaintiff had proved to their satisfaction any such imputation.

Erroneous also in this, that it leaves the jury to find what would be "any unjust imputation upon her character," as a legal and fit subject for damages.

It is obvious that "any unjust imputation upon her character," however unimportant or trivial it might be, could not legally be the subject of damages. Yet the jury were authorized by the instructions to make the least possible unjust imputation an element of great damages, although such imputation did not affect in any degree her moral character or fitness for married life.

There is nothing in the testimony on which this instruction could be based, except that "all her sisters wished she had sense enough to stay out of the store and let him alone," and "she wished Miss Lawrence would not be foolish enough

to run after him." If such imputations were unjust and proved to be so, they would not constitute any legal or proper subject for damages, yet they would be suited to excite indignation in the minds of a jury and induce them to give exorbitant damages as a punishment.

*A. Libbey* and *L. Clay*, for the defendant, upon the admissibility of the defendant's mother's declarations, contended,

1. It ·was competent for the plaintiff to prove how she and defendant were received by their respective families, and the understanding of their friends and relatives in regard to their engagement. 1 Parsons on Contracts, 546; *Hutton* v. *Mansel*, 3 Salk., 16, 46; *Wightman* v. *Coats*, 15 Mass., 1; *Honyman* v. *Campbell*, 2 Dow. & C., 282; *Southard* v. *Rexford*, 6 Cowen, 254; Comyn on Con., 416; Addison on Con., 677; *Wells* v. *Pudget*, 8 Barb., 323; *Southard* v. *Rexford*, 6 Cow., 254; *Perkins* v. *Hersey*, 1 R. I., 493; *Baldy* v. *Stratton*, 1 Jones, (11 Penn.,) 316.

To show how and in what capacity defendant's mother received plaintiff, it is competent for her to show what she said to her in regard to those matters during the reception. Indeed, it is difficult to conceive how it can be shown that the parents of the parties receive them as suitors and as betrothed, without proving what is said and done during the reception. A silent reception would prove nothing. What is said is a part of the *res gestæ*.

2. The promise to marry must be mutual. To make out her case it is as important that plaintiff should prove a promise on her part as on the part of defendant. The authorities all agree in this. The evidence was admissible as tending to show a promise on part of plaintiff. *Hutton* v. *Mansel*, and *Wightman* v. *Coats*, before cited; *Peppinger* v. *Low*, 1 Halsted, N. J. R., 384; *King* v. *Kersey*, 2 Carter, Indiana R. 402; 1 Parsons on Contracts, 546; *Daniel* v. *Bowles*, 2 Car. & P., 554.

In *Hutton* v. *Mansel*, C. J. HOLT held it was sufficient for the plaintiff to show that she carried herself as one consent-

ing." This evidence shew that plaintiff carried herself as one consenting. Plaintiff visited defendant's mother on his invitation. During that visit Mrs. Cooke addressed her in a manner tending to show that she understood plaintiff was to marry her son. Plaintiff made no reply to the contrary. She demeaned herself as one consenting, and held herself out as engaged.

*Peppinger* v. *Low*, and *King* v. *Kersey*, go so far as to hold that declarations made by plaintiff to her friends, while receiving defendant's visits and before any estrangement, are competent evidence to prove a promise on her part.

DICKERSON, J. — Assumpsit for an alleged breach of promise of marriage.

Several questions are reserved by the defendant.

1. That the verbal promise proved is void by the statute of frauds, as it was not to be performed within a year. The testimony upon this point was, that the defendant said to the plaintiff that he was not able to marry her then, but promised to marry her within four years. It is obvious that this promise might have been performed within a year; and it does not appear that the parties understood that it was not to be performed within that time. It is well settled that such a promise need not be in writing. *Linscott* v. *McIntire*, 15 Maine, 201.

2. Exception is also taken to the instruction of the Judge that evidence of the defendant's property was admissible to show, among other things, the injury to the plaintiff's affections, or the mortification and pain resulting from the breach. It was competent for the plaintiff to show the pecuniary ability of the defendant to afford her a comfortable support, as one of the elements of the damage she had sustained by his failure to perform his contract. The instruction simply stated an inference which the jury had a right to draw from the evidence without such instruction; the greater the defendant's pecuniary ability, other things being equal, the stronger would naturally be her hopes of

happiness from the alliance, and the deeper would be the wound to her feelings from the contrast of disappointment. The instruction was unexceptionable.

3. The Judge instructed the jury that, in estimating the damages, they might take into consideration any unjust imputation upon the plaintiff's character. This instruction is claimed to be erroneous. It is, also, suggested that there is no evidence upon which to predicate it. If there is not, the defendant could not have been damaged by it, and has no legal ground of complaint on account of it; but if there is such evidence the instruction was clearly correct.

The circumstances which attend a breach of promise of marriage may be given in evidence in aggravation of damages, whether they occurred before, at the time, or after the breach. *Baldy* v. *Stratton*, 11 Penn., 316.

Seduction, produced under color of a promise of marriage, is admissible to aggravate the damages. *Paul* v. *Frazier*, 3 Mass., 73.

Evidence, showing the circumstances of contumely and aggravation which attend the refusal of a party to perform a contract of marriage, is admissible, though it may involve a slander, whether actionable or not. *Chesley* v. *Chesley*, 10 N. H.

In the exercise of their right to draw inferences from the facts proved, it was competent for the jury, in the case at bar, in estimating the damages, to consider the period of time that had elapsed pending the engagement, the intimacy of the parties, the frequency of the defendant's visits, the time, place and circumstances of making such visits, and the imputations, if any, cast upon the plaintiff's character, under these circumstances, by the defendant's denial, on oath, that, notwithstanding all these considerations, he never promised or intended to marry her. The jury, by their verdict, discredited this part of the defendant's testimony, and, doing so, they had a right to regard it as an attempt on the part of the defendant, in the most public and solemn manner,

to excite groundless suspicions against the plaintiff's character.

4. The instruction complained of, that the defendant in case of a breach of his promise was bound to put the plaintiff in as good condition as if the contract had been performed, must be taken as referring to her pecuniary condition. Her loss of pecuniary support is one of the elements of damages. Evidence of the defendant's pecuniary ability was properly introduced to show the probable character of such support. No inquiry was instituted into his habits or temper, and no evidence introduced to show whether the marriage would prove a fortunate or unfortunate one for the plaintiff, in other respects. The jury must be presumed to have understood this instruction to be applicable to the evidence upon the subject to which it related, and not to have indulged in vague speculations not warranted by the evidence. The instruction called for the judgment of the jury upon the question of the pecuniary value to the plaintiff of a matrimonial alliance with the defendant, and the jury must have so understood it. In this view of the case, the instruction was unobjectionable.

5. The defendant further objects that the plaintiff was permitted to testify that, while at the defendant's mother's, the latter said to her that, when she was gone, she should leave her husband in the plaintiff's hands, feeling he would be in good hands, and that she should give the plaintiff her property. To this the plaintiff made no reply.

If the defendant is liable, it is in virtue of his own personal promise, which is to be proved by his acts and declarations and conduct toward the plaintiff. His parents could not bind him by any declarations they might make, or opinions they might express in his absence, and without his knowledge. They might wish to promote an alliance repugnant to his wishes and intentions. Their naked declarations, touching the relation between him and the plaintiff, made in his absence, make no part of the *res gestæ*, and are not admissible to prove a promise by him.

The defendant's mother, moreover, was a competent witness. Now that parties are witnesses, it would be an unwarrantable relaxation of the rules of evidence to sustain the admission of the declarations in question to prove a promise by the defendant.*

Nor is this difficulty removed on the ground that the testimony is admissible to prove a promise by the plaintiff. She is a competent witness, and could testify to such promise, if any was made by her, or to her demeanor toward him as a suitor. It is not competent for her to testify to the declarations of other competent witnesses, in order to lay the foundation for corroborating her testimony, by leaving the jury to infer a promise on her part from her silence when such declarations were made. In the cases cited by the plaintiff's council, the promise of the woman was inferred from her presence when the offer was made, and the consent of her parents asked, without her making any objection,. her subsequent reception of the suitor's visits, or her demeanor toward him, in his presence, as one betrothed. After a somewhat extended examination of the authorities, we have. not been able to find any case which authorizes the admission of the testimony complained of.

The exceptions upon this point must, therefore, be sustained; and, as there must be another trial of the case, it is unnecessary to consider the motion to set aside the verdict, as against the weight of evidence, or for excessive damages.

*Exceptions sustained, and a new trial granted.*

APPLETON, C. J., CUTTING, KENT and TAPLEY, JJ., concurred.

WALTON and BARROWS, JJ., did not concur.

* See *Russell* v. *Cowles*, 15 Gray, 582, published since this opinion was announced. — REP.