## BROYHILL v. NORTON, Appellant.

### Division One, May 27, 1903.

1. **Marriage Engagement:** ELEMENTS: PLEADING.  A proposal of marriage by the man and an acceptance by the woman, both parties being free to marry, constitute a valid contract to marry. And a petition which sets forth these things is not demurrable on the ground that it does not show any promise to marry.

2. ———: BREACH: DEFINITE TIME: OBJECTION AFTER TRIAL BEGUN. Where the attention of the court has not, in the demurrer to the petition which charges it with failing to state a cause of action, been called to an omission of an allegation of a definite time in which the marriage was to be consummated and of a request by plaintiff before suit that defendant marry her, and no objection of that kind is made to the petition until the trial has begun, it should then be overruled, if the petition can be |construed as fairly implying what ought to have been expressly averred. And in this case it is held that objections to a petition, which alleges that defendant informed plaintiff that he did not intend to marry her and that he had abandoned her, that it did not charge a definite time for consummating the promise and a request by her before suit, came too late after the trial began, since those things may be implied in those allegations. The petition in such case states a cause of action defectively, but not a defective cause of action.

3. ———: PLEADING: ELEMENTS OF DAMAGES.  Plaintiff is not required to specify in her petition those elements of her damage that follow naturally a breach of the contract.

4. ———: BREACH: INSTRUCTION.  Where defendant is alone responsible for the introduction into the case of an element of damages, to-wit, an attempt to blacken plaintiff's character by charging her with unchaste conduct, and has failed, he has no right to complain that it was made an element of damages in an instruction for plaintiff, although not so made by the pleadings.

5. ———: ———: CHARACTER OF ACTION.  A suit for breach of marriage contract is not an action in tort, although it partakes somewhat of the characteristics of such an action, since injury to the plaintiff's reputation is one of the elements of damage. Freedom to make any just defense he may have should be extended to the defendant, but if in doing that he adds to her other injuries a further injury to her reputation for chastity, without any reasonable cause for the attempt, actual damages for that injury should be added by the jury.

6. ———: ———: VISITING ASSIGNATION HOUSES. Instructions to the effect that the jury are warranted in inferring that the purpose of plaintiff's visits to assignation houses was illicit intercourse with men should not be given if they leave out of view the evidence that plaintiff. visited them without knowing their character or for a legitimate purpose.

7. ———: ———: EXCESSIVE AWARD. The petition asked only for compensatory damages for a breach of the contract to marry plaintiff, but at the trial defendant's speech was flippant, and abounded in indecent insinuations, and volunteered the innuendo that he had seduced her, but she made no such charge and denied the fact, nor did the instructions authorize the jury to figure the element of seduction into their award. *Held,* that the jury should not have permitted his conduct to control the amount of their verdict, but their award of $25,000 is so out of proportion to the means and condition of the parties as to strongly indicate that the jury had it in mind to punish him for making the hurtful insinuations, and therefore the judgment is affirmed only on condition that plaintiff file a *remittitur* of $12,500.

Appeal from Clay Circuit Court.—*Hon. J. W. Alexander,* Judge.

AFFIRMED CONDITIONALLY.

*Bremermann & Wherry* for appellant.

(1)   The petition is fatally defective and does not state a cause of action.   Cole v. Holiday, 4 Mo. App. 98; 4 Am. and Eng. Ency. Law (2 Ed.), p. 898; Martin v. Patton, 1 Littell (Ken.) 234; Greenup v. Storer, 3 Gilm. 212; 1 Estee's Pleadings and Forms (2 Ed.), 502, note 11; 1 Boone's Estee's Pleadings (4 Ed.), pp. 738 and 739, secs. 1365 and 1367; 3 Ency. Pleading and Prac., p. 688; 2 Parsons on Contracts (6 Ed.), pp. 63-64; Worcester's Unabridged Dictionary; Fible v. Coplinger, 13 B. Mon. (Ky.) 464; Davis v. Slagle, 27 Mo. 600.   (2)   The court committed prejudicial error in admitting evidence for plaintiff.   Cole v. Holiday, supra.   (3)   The court committed prejudicial error in refusing to admit defendant's evidence.   (4)   The court committed error in giving instructions, 1, 2, and

3 for plaintiff. Sharp v. Johnson, 59 Mo. 557; Glascock v. Shell, 57 Tex. 215; 3 Ency. Pl. and Prac., 688 and 689; Dupont v. McAdow, 6 Mont. 226; Goddard v. Westcott, 82 Mich. 180; 4 Am. and Eng. Ency. Law (2 Ed.), 898; Blasland v. Hilig, 70 Mo. App. 301; Ragan v. K. C. So., 144 Mo. 623; Hammond v. Sancer, 84 Ind. 6; Duncan v. Van Horn, 16 Iowa 476. (5) The court erred in refusing defendant's instructions 5, 6 and 7. Davis v. Slagle, supra; Link v. Westerman, 80 Mo. App. 592; May v. Crawford, 150 Mo. 504. (6) The verdict was grossly excessive and the result of passion, partiality and prejudice·on the part of the jury, and motion for new trial and motion in arrest should have been sustained. Koeltz v. Bleckman, 46 Mo. 322; Doty v. Steinberg, 25 Mo. App. 334; Matthews v. Railroad, 26 Mo. App. 75; Unterberger v. Scharff, 51 Mo. App. 102; Ellis v. Construction Co., 60 Mo. App. 69; Gurley v. Railroad, 104 Mo. 211; Chitty v. Iron Co., 148 Mo. 64.

*Kagy & Horn* for respondent.

(1) The petition contains every element necessary to state a good cause of action. Among other things it states "that said defendant has abandoned plaintiff and informed her that he does not intend to consummate said contract and does not intend to marry her, as by the terms of the contract he was bound to do." It will not be said by this court that when defendant abandoned plaintiff and informed her that he did not intend to marry her, she must, after such declaration, get upon her knees and beg him to do so. (2) A request to marry may be dispensed with where the defendant has refused to be married on the date fixed. Reed v. Clark, 47 Cal. 194; Kelly v. Brennan, 18 R. I. 41. Nor is a request necessary when the defendant has broken off the engagement. Willard v. Stone, 7 Cow. (N. Y.) 22; McCormick v. Robb, 24 Pa.

St. 44; Wagonsellar v. Simmer, 97 Pa. St. 465; Burk v. Sharer, 92 Va. 345; Olson v. Salberson, 71 Wis. 663.    (3)    Instruction 6 does not state the law as it is. It states that the mere fact that plaintiff visited assignation houses raises the presumption that she visited them for a lewd purpose.  That is not the law.  It omits the element of knowledge.  If that be the law, any pure woman visiting a place of that kind without knowledge of the character of the house, however innocent she may be, will be written down as a prostitute. The evidence shows why she went there.  In the case at bar there was no evidence upon which to base these instructions and no evidence that the plaintiff visited such a house, knowing its character, nor is there any evidence that the place visited was of ill repute.  The evidence shows that she went there for a lawful purpose, in pursuit of employment.  In any event, it could only be given in mitigation of damages, and the instruction omits this element.  A search of the record will not show a scintilla of evidence to support this instruction.  If she had been guilty of criminal relations with other men, the rule might be different; but the instruction says: "Guilty of unchaste conduct with other men."  In that case such fact, if true, is not a defense.  A woman may be guilty of unchaste conduct without being criminal.  Boynton v. Kellogg, 3 Mass. 189; Burnett v. Simpkins, 24 Ill. 264.    (4)    The plaintiff sought to recover under a breach of contract of marriage.  The defendant brought out that she was in the family way, and he was the cause of it.  He was guilty of rape.  This was brought out by his own testimony for no purpose other than to blacken her character, because of his own act.  This did, and justly so, aggravate the damages.  Southard v. Rexford, 6 Cow. 254, cited in Davis v. Slagle, 27 Mo. 603.  We suggest, however, that if in the opinion of this court the damages awarded are excessive, plaintiff will enter a

remittitur in such sum as the court may order. That this course is proper we cite Chitty v. Railroad, 166 Mo. 435.

VALLIANT, J.—Breach of promise of marriage. The petition is as follows:

"The plaintiff, Lena Broyhill, for her cause of action against the defendant, H. B. Norton, states: That on the 5th day of August, 1899, she was and now is a single woman and unmarried. That on said date the said defendant proposed to marry plaintiff, and plaintiff accepted said proposition of marriage, no definite time having been fixed for the consummation of their nuptials. That in pursuance of said contract plaintiff made preparations to consummate the same at such time as the said defendant and she might determine upon, and said defendant informed plaintiff that as soon as he had completed the construction of a house in Westport, Missouri, they would consummate said contract; and plaintiff states that said house has been completed, yet the defendant, notwithstanding his promise to make plaintiff his wife, has failed, neglected and refused, and stills fails, neglects and refuses to carry out said contract, as by the terms thereof he was bound to do. That said defendant has abandoned plaintiff and informs her that he does not intend to consummate said contract, and does not intend to marry plaintiff, as by the terms of his contract he was bound to do. Plaintiff states that it has become publicly known, and particularly among her relatives and friends, that she and the said defendant were engaged to be married, and the failure of said defendant to consummate said marriage has placed plaintiff in an embarrassing position; has caused her great mental suffering; and by reason of the premises plaintiff states that she has been damaged in the sum of twenty-five thousand dollars. Wherefore plaintiff demands judgment against said defendant for said sum of

twenty-five thousand dollars and for her costs of suit.''

There was a demurrer to the petition on the ground that it did not state facts sufficient to constitute a cause of action, which was overruled, whereupon defendant filed for answer a general denial. When the cause came on for trial defendant objected to any evidence in support of the petition on the grounds: first, that it did not state facts sufficient to constitute a cause of action; second, there was no allegation of a mutual promise of marriage; third, no allegation that plaintiff was ready, able and willing to marry; fourth, it is not alleged that plaintiff requested defendant to marry her. The objection was overruled and defendant excepted.

The testimony on the part of plaintiff tended to show as follows:

At the time of the trial plaintiff was twenty-six years old and had never been married. She was living with her mother in Kansas City. Defendant came to board with her mother in January, 1899. He began at once to show plaintiff attention; his interest in her apparently increased and his attentions became more pointed until in August of that year, when he had taken her out to a park in the city, their conversation turned on mutual friends of theirs who were engaged to be married, and in that connection he said to her that he had concluded after careful study that if she was willing they would in the spring go to Mr. Wilcox's and have her to take the name of Mrs. Norton. Mr. Wilcox was the preacher of the church in Kansas City which they sometimes attended together. She replied that she was willing. He said that he would finish paying for a house he was building or repairing in Westport on the 12th or 15th of June next, and they would then get married. After that he took her out to Westport several times to see the house and told her they would live there when they were married. During all the time after their engagement in the park

until the latter part of January, 1900, his attentions continued with demonstrations of affection. Upon one occasion, however, in January, 1900, a young woman visited the defendant at the house of plaintiff's mother at night, and was received in his room; she was taken sick during the night and defendant requested plaintiff to wait on her or render her a particular service, which the plaintiff refused to do. The next day defendant told the plaintiff he would not marry her, giving as his reason her refusal to wait on the young woman mentioned. She told him she thought it was his duty to marry her and requested him to do so, but he refused. Sometime after that the plaintiff's mother spoke to defendant, and he told her that he would not marry the plaintiff.

The testimony on the part of the defendant, which on the main issue was chiefly his own, was to the effect that he never proposed marriage to the plaintiff and never promised to marry her. He admitted that he bestowed amorous attentions on her, but denied that they were of honorable purpose. Running through his testimony was a strong innuendo that he had sustained an immoral relation with her. (This, however, she positively denied.) Referring to the conversation which she had mentioned in her testimony as having occurred in the park when they spoke of mutual friends being engaged to be married, he said: "I said 'Never get discouraged, Sis, I maybe will want you to change your name to Norton some of these days, I don't like Broyhill nohow.' I know the circumstance as well as if it occurred yesterday, and I know the position, you can't get me on that, and then I saw probably the girl thought I meant it, and I said, 'Why, here, this is not any engagement whatever; I am in the hole, I owe money, I would not marry any girl till I get out of debt,' and so I spoke to her; I gave the time when I might possibly be out of debt, that is, paying for the house; that would put me out of debt if I could economize. I

thought I could make both ends meet; I did not speak
of marrying when that house was paid for; I said this
is no engagement, when I ask a girl to marry me I will
do so in such a way she will understand it; I made one
mistake of that kind once before.'' In his further ref-
erence to that park interview he volunteered to give a
statement implying that he took an indecent liberty
with the plaintiff at that time. The most of his testi-
mony was in the form of a rambling narrative, but the
following questions by his counsel were asked: ''Q.
You heard her testimony when she said you asked her
to marry you, what about that? A. It is a fake. Q.
You heard that, what about it? A. Yes, sir; I heard
it; it is a fake. Q. She said you told her about Janu-
ary, 1900, you would not marry her? A. She saved
me the trouble by firing me; she said you can go either
with Anna or with me.'' (Anna was the young woman
before mentioned, who had visited his room and been
taken sick there.)

Defendant also introduced evidence the purpose of
which was to show that the plaintiff was guilty of un-
chaste conduct with other men, but that was met by
testimony for the plaintiff to the contrary.

At the request of the plaintiff the court gave the
following instructions:

''1. If the jury find from the evidence that on or
about the 15th day of August, 1899, plaintiff was single
and unmarried, and that at such time defendant pro-
posed marriage to plaintiff, and that plaintiff accepted
such proposal, no definite time having been fixed for
such marriage; that thereafter defendant failed and
refused to marry plaintiff, abandoned her and declared
to her that he did not intend to marry her, and denied,
and still denies, that he made such proposal, then you
shall find for the plaintiff.

''2. If you find for the plaintiff, you shall take
in consideration, as may appear by the evidence, the
length of the engagement; the depth of plaintiff's de-

votion, if any; her lack of independent means; her mortification and injured feelings and affections, if any; her loss of marriage; her altered social position, if any, caused by defendant's conduct; and if you believe from the evidence that defendant's attempt to prove unchaste or improper conduct with others, on the part of plaintiff, was made without reasonable cause to believe that such charge could be proven, and you are satisfied that plaintiff is innocent of such charge, that fact shall be taken into consideration by the jury in aggravation of plaintiff's damages; and you shall assess her damages at such amount as you believe she should recover, not exceeding twenty-five thousand dollars.

"3.   If you find that such proposal of marriage was made by defendant, and accepted by plaintiff, then any illicit relations that may thereafter have occurred, between plaintiff and defendant induced by such promise can not justify defendant in refusing to consummate such marriage."

At the request of the defendant the court gave the following:

"1.   The burthen of proof is on the plaintiff and she must prove her case, as charged in her petition, by a preponderance of the evidence, and, if the jury find from the evidence that she has failed to do so, they must find the issues for the defendant.

"2.   Unless the jury can first find from the evidence that the defendant actually promised to marry the plaintiff, and that she in earnest accepted said promise, and that the plaintiff actually and in earnest promised to marry the defendant, and he received her promise in earnest; and unless the jury first find that such mutual promises were so given and received, then the jury must find the issues for the defendant; and, in such case, it makes no difference whether or not plaintiff and defendant had sexual intercourse with each other.

Broyhill v. Norton.

"3.  If the jury find from the evidence that the attentions, if any, which defendant showed plaintiff, were merely such attentions as might be expected in a case of illicit intercourse between a man and a woman where one or both wished a prolongation of the same and were seeking opportunities for sexual gratification, and were not prompted by those feelings of affection which usually follow a marriage engagement, then they must find the issues for the defendant.

"4.  The mere fact that an unmarried man is gallant to women and shows to unmarried women courtesies and attentions is, taken alone, no sufficient proof that he has marriage in his purpose nor that he is engaged to be married. If, therefore, the jury find from the evidence that defendant was gallant in his conduct to plaintiff and showed her courtesies and attentions, whether from a spirit of gallantry or from the motive indicated in instruction number 3, in defendant's series of instructions, but not for the purpose of marriage nor from the feelings of marriage engagement, then they must find the issues for defendant.

"8.  The jury in arriving at a conclusion on the issues made by the pleadings must look at all the evidence in the case, and are entitled to draw from the facts, proven by a preponderance of the evidence, all just, proper and logical inferences."

The court refused the following asked by the defendant.

"5.  Unless the jury can find from the evidence that the plaintiff, before she instituted her suit, requested defendant to marry her, then they must find the issues for the defendant.

"6.  If the jury find from the evidence that plaintiff visited assignation houses or any house of ill fame, whether once or oftener, the fact of such visiting is prima facie evidence that she visited them for the purpose of sexual intercourse with men, and the burden is on her to rebut the presumption so created

by proof satisfactory to the minds and reasons of the jurors; and if she fails to do so, then the jury are warranted in the conclusion that the purpose of such visits was illicit intercourse with men, and that she is an unchaste woman.

"7. If the jury find from the evidence that the plaintiff was, at any time before the alleged breach of the proposition of marriage charged in the petition, guilty of unchaste conduct with other men, and defendant was ignorant of the same, then the jury must find the issues for the defendant."

The verdict was for the plaintiff assessing her damages at $25,000. From the judgment on that verdict the defendant appeals.

I. Appellant's first assignment challenges the sufficiency of the petition. Under this point it is said that the petition does not show any promise to marry; that it shows only a proposal of marriage, which it is argued is not a promise. The petition shows a proposal by the defendant and an acceptance by the plaintiff; both parties being free to marry, nothing more was needed to constitute a valid contract to marry.

The point most earnestly insisted on, however, is that the petition having stated that there was no definite time agreed upon for the marriage, it devolved on the plaintiff to allege in her petition that she requested the defendant to marry her. It is the law that where the contracting parties have never agreed on a date for the consummation of their engagement, nothing else occurring, no breach exists until a request and refusal is shown. [Cole v. Holliday, 4 Mo. App. 94; 2 Parsons on Contracts (3 Ed.), *63.] In this respect the contract of marriage does not differ from any other contract. An obligation to pay money at an indefinite period, means within a reasonable time, and is not broken until a demand after a reasonable time and a refusal.

In Cole v. Holliday, above cited, Judge BAKEWELL, for the court, loc. cit. 98, said: "The promise to marry is, in law, like any other contract. The promise must, in general, be reciprocal, and obligatory upon both parties. It is not necessary to prove an express promise *toti-dem verbis;* but the contract must be evidenced by the unequivocal conduct of the parties, and by a definite understanding between the parties themselves, their friends and relatives, that a marriage is to take place; and, when the promise of the man is proved, evidence of the woman having demeaned herself as if she concurred is sufficient to establish her promise to marry him. . . . The contract is binding though the precise time of completing it is not agreed upon; and, in such case, the law construes it to be a promise to marry in a reasonable time, on request. When the promise does not ascertain and fix the time, a special request must be laid in the declaration and proved at the trial, unless the defendant, by marrying another, has incapacitated himself from performing his engagement, in which case that fact should be alleged." What is there said is not in criticism of the petition, for in that case the petition had alleged that the defendant had been often requested and had refused to complete his contract, but the court was considering the case as made by the evidence. In the same opinion the learned judge said: "We are of the opinion that the plaintiff in an action of this character must allege and show, not only that defendant did not marry her, but also that she was willing and offered herself to marry him, and that he refused her, before suit was brought; or, at least, that he refused her positively and unequivocally, so as to relieve her of all necessity of making an actual tender of herself to him to marry him. Allowance will of course be made, even in an action of this nature, for that natural modesty which is the glory of the sex, but which the law considers to be not wholly inconsistent with bringing an action by the woman

against the man for a money compensation for a breach of a contract so personal and peculiar as this.'' The law is well expressed in that opinion.

In the case at bar, the petition does not expressly state that the plaintiff requested the defendant to perform his contract to marry her, but it does allege that the defendant informed the plaintiff that he did not intend to marry her, and that he had abandoned her. The defendant did not, until the trial had begun, indicate any objection to the petition on the ground that it omitted to state a willingness on the part of the plaintiff to consummate the engagement, or that it failed to state that she requested the defendant to do what he agreed to do. True, there had been a demurrer filed, but it assigned only the ground that the petition did not state facts sufficient to constitute a cause of action. If defendant meant by his demurrer that the petition was defective in the particular he now asserts, he waived that defect when he answered over. In such case, where the particular omission in the petition has not been called to the attention of the plaintiff or the court until the trial was begun, if the petition can be construed as fairly implying what ought to have been expressly averred, the objection should be overruled.

When the defendant discontinued his attentions to the plaintiff and expressly informed her that he would not marry her, she was not obliged to again offer herself to him in marriage. The petition is not as explicit as it should be on the point of her willingness and ability to marry, but that may be fairly inferred and the worst that can be said of the petition is that it states a cause of action defectively, and not a defective cause of action. [Water Co. v. Aurora, 129 Mo. 540, l. c. 584.]

Appellant also assigns for error the admission, over his objection, of evidence tending to show that the plaintiff requested him to comply with his agreement, which objection was founded on the ground that

the petition failed to state such a request. What we have already said of the petition in this particular, applies also to this point.

II. Appellant's criticism of the first instruction for plaintiff is that it omits to require the jury to find that the plaintiff requested the defendant to marry her and that it refers to his refusal. There is nothing in that criticism.

The criticism of the second instruction is that it submits to the consideration of the jury elements of damage not set out in the petition.

Plaintiff is not required to specify in her petition those elements of her damage that follow naturally a breach of contract. This instruction mentions but one element of damage that does not flow as a natural consequence of the breach of such a contract and the defendant is alone responsible for the introduction ·of that element into the case. He went outside of the pleadings with an attempt to blacken the character of the plaintiff by charging her with unchaste conduct, and having failed in that, he has no right to complain that it was an element of damage not made by the pleadings. His counsel in their brief say that the instruction was erroneous in directing the jury to take that fact into consideration without requiring them first to find that he was actuated by malice in making the charge.

This is not an action in tort, although it partakes somewhat of the characteristics of such an action, since injury to the plaintiff's reputation is one of the elements of damage naturally to be considered. Still, it is not to be governed entirely by the rules that govern in suits for slander, libel and the like. It is an action arising out of a contract and the plaintiff is asking only compensation for her injury. Among the elements of damage naturally following a breach of such a contract, are, suffering from shame and injury to reputation. These are the elements of actual injury

for which a plaintiff in an action *ex contractu* is entitled to recover as for compensation.  Surely if the defendant so conducts his defense as to  aggravate  the plaintiff's actual suffering, he should compensate her for it.  So far as concerns her actual injury it is the same, whether he was actuated by malice or not.  But in order to give a defendant in such case freedom to make any just defense he may have, the law seems to have so qualified the right of plaintiff to have the character of the defense taken into account by the jury, as that it will be taken into account only when the jury are satisfied that it was attempted  without  reasonable cause.  [3 Sutherland on Damages (2 Ed.), p. 2189.] We do not  understand the  authorities cited by  the learned counsel for appellant to go any farther.  [Haymond v. Saucer, 84 Ind. 3; Denslow v. Van Horn, 16 Iowa 476; Boone's Estees Pl., sec. 1370.]    The attack on plaintiff's character in this case was particularly unfair under the  circumstances.  The  parties lived in Kansas City and the suit was begun there; defendant obtained a change of venue to Clay county; the answer of the defendant was a general denial. There was, therefore, no warning to the plaintiff that such an attack would be made.  The trial occurring in a county where the parties did not live, and where witnesses concerning matters not anticipated could not be readily called into court, put the plaintiff at a disadvantage.  Under those circumstances if the defendant had no reasonable ground to  believe that the charge could be  sustained, it was a wanton  injury, and the court was right in directing the jury to take it into account in assessing the plaintiff's damages.

There is nothing in the third instruction of which the defendant has cause to complain.

The fifth instruction for  defendant,  refused, is based on the idea that it was incumbent on the plaintiff before bringing this suit to make a formal request

of defendant to marry her. We have already discussed that proposition.

The sixth instruction asked by defendant was properly refused because it leaves out of view the evidence that plaintiff visited the places referred to without knowing their character, and for a legitimate purpose.

The seventh instruction was properly refused, because there was no evidence on which to base it.

There was no error in giving or refusing instructions.

III. The verdict was for the plaintiff for $25,-000. We have no doubt that the conduct of the defendant on the trial and the character of his testimony were chiefly the cause of this large award. His speech was flippant in style, and abounded in indecent insinuations. His innuendo that he was criminally intimate with the plaintiff was altogether voluntary. If the jury obtained the idea that he had seduced the plaintiff, and for that reason made the assessment of damages more heavy than they otherwise would have done, he alone conveyed that idea to them. The plaintiff made no such charge and denied the fact. He has therefore no one but himself to blame for this large amount of damages against him. He made the jury believe that he had blighted the life of this young woman and they seem to have concluded that he ought to compensate her for the injury as far as money could do so.

But though the conduct of the defendant may have provoked the righteous wrath of the jury, still the jury had no right to allow that to influence their award. The cold rule of law alone should guide them. There is in this case no question of punishment. The plaintiff is not asking punitive damages. She asks only compensation for the injury done her by the failure and refusal of the defendant to fulfill his engagement to marry her. He went outside of the issues in the pleadings to insinuate that he had seduced her, and for

the actual additional suffering that she sustained because of that unjust attack she is entitled to compensation. There is, however, nothing but his own evidence tending to prove his guilt and her shame in that respect. Her own testimony denies it, and as the jury credited her and discredited him in every other particular, they ought to have discredited him on this point also, and should not have figured the element of seduction into their award. It does not appear expressly from anything in the record that the jury did include damages for seduction in their award. The instruction did not authorize it. But the award of $25,000 is so out of proportion to the means and condition of the parties as to strongly indicate that the jury had it in mind at least to punish him for making the insinuations. The defendant is a railway mail clerk. The only property that is spoken of as belonging to him is the house in Westport, which in August, 1899, he hoped to finish paying for by June of the next year.

A retrial of a case of this kind should not be ordered unless positively necessary; the good of the parties and the morals of the community are not promoted by it.

In Chitty v. Railroad, 148 Mo. 64, and again in the same case in 166 Mo. 435, it was pointed out by MAR-SHALL, J., speaking for the court, that it is the right and duty of this court to affirm the judgment when the verdict is for the right party, and no fault with it can be found except that the award of damages is excessive, if the plaintiff will remit the amount that will bring the award down to a sum that this court deems reasonable and just. Considering the injury sustained by the plaintiff, and the condition and means of the parties, we are of the opinion that the damages assessed are twice what they should be, but we will not reverse the judgment if the plaintiff within ten days will remit $12,500 of the amount; if she will do so, the judgment

will be affirmed, otherwise it will be reversed and the cause remanded for a new trial.

All concur, except *Robinson, J.,* absent.