**Beverly WADDELL and Eugene Waddell**

**v.**

**Robert BRIGGS.**

Supreme Judicial Court of Maine.

Jan. 27, 1978.

---

Lipman, Parks & Livingston, P. A. by David M. Lipman, Augusta (orally), for plaintiffs.

C. J. & N. C. Bourget by Norman C. Bourget, Augusta (orally), for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DUFRESNE, Active Retired Justice.[1]

On August 26, 1974 the plaintiffs, Beverly and Eugene Waddell, instituted an action

[1] Mr. Justice Dufresne sat at argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

in the Superior Court of Kennebec County against the defendant, Robert Briggs. In their initial complaint, the plaintiffs alleged that the defendant had been engaged to their seventeen year old daughter, Kathy, and that the couple had intended to marry on the tenth of the month at the plaintiffs' residence. The plaintiffs further averred that, in reliance upon the defendant's promise of marriage of their daughter, wedding invitations had been sent for 2:00 o'clock in the afternoon of August 10, 1974, a minister had been secured to perform the wedding ceremony and food and refreshments had been gathered for a wedding reception. The plaintiffs then asserted that, notwithstanding his promise to marry, the defendant failed to show for the wedding without giving notice of his intention not to attend. For their great humiliation and suffering, plus their monetary loss, they asked that the court award them compensatory and punitive damages in the amount of ten thousand ($10,000) dollars for the defendant's willful breach of his promise to marry their minor daughter.

In response to the plaintiffs' complaint, the defendant filed a motion seeking both a dismissal of the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), M.R. Civ.P. and summary judgment in his favor pursuant to Rule 56(b), M.R.Civ.P., the contention being that the plaintiffs' action, based as it was upon a breach of promise to marry, was prohibited by 14 M.R.S.A., § 854.[2]

In an apparent attempt to avoid the operation of the statute, the plaintiffs amended their complaint by adding a second count, in which they stated that the defendant was aware and had knowledge of the preparation for the wedding and that, upon his failure to notify the plaintiffs of his intended absence at the wedding, he maliciously and intentionally caused the infliction of mental suffering to them.

Upon the defendant's renewed motion, the presiding Justice ruled that the plaintiffs' action was in contravention of the public policy of the State of Maine as set forth in 14 M.R.S.A., § 854 and ordered summary judgment in favor of the defendant.

We deny plaintiffs' appeal therefrom.

Conceding on appeal that 14 M.R.S.A., § 854 precludes an action for damages for willful breach of a promise to marry, the plaintiffs contend that their right to sue in tort for damages resulting from malicious and intentional infliction of mental distress has not been abrogated by the statute, even though the defendant's tortious conduct emanates from a broken engagement vow.

The reference 1941 legislation was couched in the broadest terminology in mandating that "[n]o action, suit or proceeding to recover damages for breach of promise to marry shall be begun after the effective date of this act," i. e. after March 25, 1941. P.L.1941, c. 104, § 1.

Obviously, the Legislature intended to abolish the contract action of marital "breach of promise," which up to that time had been given judicial recognition under Maine law. See *Gerber v. Shwartz*, 124 Me. 441, 127 A. 903 (1925); *Lawrence v. Cooke*, 56 Me. 187, 96 Am.Dec. 443 (1868).

But the Legislature did not expressly confine the application of the statute to actions in contract, which it could have done if it had wanted to be that specific. To the contrary, it used general language such as—action, suit or proceeding to recover damages—for breach of promise to marry. The Legislature undoubtedly was aware that the action to recover damages for breach of promise to marry, though brought on the theory of breach of contract, carried overtones of tort liability with respect to the measure of recoverable damages. As the Minnesota Court said: "A cause of action for breach of promise of marriage is in form on contract; but in general the law as to damages applicable to tort actions applies." *Bukowski v. Kuznia*, 151 Minn. 249, 186 N.W. 311 (1922). And if

---

2. 14 M.R.S.A., § 854. Actions for breach of promise to marry prohibited

No action or proceeding to recover damages for breach of promise to marry shall be maintained.

the breach involved wanton and wilful misconduct, exemplary damages were recoverable. *Drobnich v. Bach,* 159 Minn. 258, 198 N.W. 669 (1924). See also *Thorn v. Knapp,* 42 N.Y. 474, 1 Am.Rep. 561, 568 (1870); *Broyhill v. Norton,* 175 Mo. 190, 74 S.W. 1024, 1028 (1903); *Dauphin v. Landrigan,* 187 Wis. 633, 205 N.W. 557 (1925).

Our Court did say that in cases of breach of promise to marry the law implies, as a natural consequence of the breach, shame and mortification as well as distress of mind, and the jilted lover was allowed to recover at the hands of the finder of facts, among other indemnifying damages, reasonable compensation for the plaintiff's wound and injury to her affections caused by the rejection and for the mental depressive impact resulting from the defendant's bad faith in breaking the promise to marry. See *Tyler v. Salley,* 82 Me. 128, 19 A. 107 (1889); *Hickey v. Kimball,* 109 Me. 433, 84 A. 943 (1912).

As stated in *Stanard v. Bolin,* 88 Wash.2d 614, 565 P.2d 94, at 96 (1977):

> "Although the action is treated as arising from the breach of a contract . . ., the damages allowable more closely resemble a tort action. Thus, the plaintiff may recover for loss to reputation, mental anguish, and injury to health, in addition to recovering for expenditures made in preparation for the marriage and loss of the pecuniary and social advantages which the promised marriage offered. In addition, some states allow aggravated damages for seduction under promise to marry and for attacks by the defendant on the plaintiff's character. Furthermore, some states allow punitive damages when the defendant's acts were malicious or fraudulent."

Given the fact that the compensatory relief available in such actions was characteristically parallel to recoveries in tort actions, it is unlikely that the Legislature, as the plaintiffs now contend, intended 14 M.R.S.A., § 854 to apply solely to actions based on contract theory of recovery.

■ When it is clear that the Legislature enacted specific legislation to remedy an existing special problem, social or otherwise, such statutory enactment must be construed so as to promote the policy consideration which brought about the Legislature's action. *Maine Merchants Association, Inc. v. Campbell,* Me., 287 A.2d 430, 435 (1972). Such construction shall be adopted as will best curb the problem which the Legislature sought to suppress. Where a statute is explicitly prohibitory and, for the protection of the public good, denies the use of the judicial process for the vindication of rights that are more abused than rightfully exercised, the legislation must be broadly interpreted so as to carry out the legislative intendment and prevent the thwarting of the legal mandate. See *Randall v. Tuell,* 89 Me. 443, 36 A. 910 (1897). We must look to the end which our Legislators sought in the enactment of the law and approve a construction which will not nullify its purpose. See *Goodwin v. Luck,* 135 Me. 228, 230, 194 A. 305 (1937).

■ In the absence of legislative history or preambulary provision in the enactment of 14 M.R.S.A., § 854, we may look to prefatory statements in other jurisdictions to ascertain the underlying reason for the proscription of heartbalm suits. These indicate that such legislation was intended to eliminate the abuses associated with law suits to recover damages for breach of promise to marry. Legislatures throughout the nation viewed these actions as being used to cause extreme embarrassment and humiliation to defendants, oftentimes innocent victims of circumstantial background conditions, enabling unscrupulous plaintiffs to obtain lucrative settlements by the mere threat of a breach of promise to marry proceeding.

> "It seems to me that there is a policy enunciated by these enactments abolishing breach of promise actions which is broader than their letter. The legislatures evidently have been prompted by concern for the public morals and for the frequently innocent victims of breach of promise actions to preclude resort to the courts for relief from injury consequent to breached promises of marriage. This is true whether the acceptance was made

as a result of succumbing to the deceitful wiles of a gay Lothario or as a result of the worshipful wooing of an ardent yet sincere swain. The legislatures did not intend that courts should explore the minds of suitors and determine their sincerity at the moment of proposal of marriage but rather declared it to be the policy of the state that in the event a breach of the promise occurs relief will be denied in the courts.

The evil sought to be overcome was reasonably deemed serious enough to justify a denial of the judicial process to those asking relief from real as well as fictitious wrongs. Cases based on averments similar to those here alleged had in many instances been supported by perjured testimony and consequently brought discredit on the courts. Further, actions of this sort have been declared a menace to the marriage institution, which is a vital concern of the various states. See the declaration of policy prefacing the above-cited New York enactment." *A. B. v. C. D.,* 36 F.Supp. 85, at 87, (D.C., E.D.Pa.1940), affirmed 123 F.2d 1017 (3 Cir. 1941), cert. denied, 314 U.S. 691, 62 S.Ct. 361, 86 L.Ed. 553.

As stated in *Pavlicic v. Vogtsberger,* 390 Pa. 502, 136 A.2d 127, 130, 131 (1957):

"Perhaps there should be a way to compensate these disillusioned souls, but it had been demonstrated that the action of breach of promise had been so misemployed, had given rise to such monumental deceptions, and had encouraged blackmail on such a scale, that the Legislature of Pennsylvania, acting in behalf of all the people, concluded that the evil of abuse exceeded to such an extent the occasional legitimate benefit conferred by a breach of promise suit that good government dictated its abolition."

That the action was subject to great abuse at the hands of the gullible and sympathetic juries may be realized in a concrete

way by reading the decision of this Court in *Garmong v. Henderson,* 114 Me. 75, 95 A. 409 (1915), where a jury verdict of $116,000 was overturned, the Court saying that the probabilities of the case were so inconsistent with the plaintiff's claim as to induce the belief that the jury either did not sufficiently weigh all of the facts of the case or were influenced by sympathy, passion or prejudice.

The potential for such abuses exists, whenever a claim of injury stems from a broken promise to marry, whether the plaintiff prosecutes the action in a tort or in a contract proceeding.[3]

Hence, actions stemming directly or indirectly from, or arising out of, a breach of promise to marry have been held within the ban of statutes similar to our section 854 of title 14, M.R.S.A., even though the proceedings were grounded in tort instead of for breach of contract. See *A. B. v. C. D.,* supra; *Sulkowski v. Szewczyk,* 255 App. Div. 103, 6 N.Y.S.2d 97 (1938); contra: *Langley v. Schumacker,* 46 Cal.2d 601, 297 P.2d 977 (1956).

The Massachusetts Court in *Thibault v. Lalumiere,* 318 Mass. 72, 60 N.E.2d 349 (1945), stated it well, when it said of its statute which provided as does our own that "no action, suit or proceeding shall be maintained therefor [for breach of contract to marry]:"

"This statute changed the public policy of this Commonwealth. It not only abolished the right of action for breach of promise but it went farther and abolished any right of action, *whatever its form,* that was based upon such a breach. *The breach is no longer a legal wrong."* (Emphasis supplied)

■ Our statute prohibits the recovery of any damages, direct or indirect, for the breach of promise to marry and a party cannot circumvent the statute by suing in

---

**3.** We intimate no opinion, whether the statute would bar an action or proceeding to obtain on established equitable principles restitution of property given on condition of a promise to marry. In favor, see *DiCicco v. Barker,* 339 Mass. 457, 159 N.E.2d 534 (1959); *Pavlicic v.*

*Vogtsberger,* 390 Pa. 502, 136 A.2d 127 (1957); *Gikas v. Nicholis,* 96 N.H. 177, 71 A.2d 785 (1950). Contra, see *Andie v. Kaplan,* 263 App. Div. 884, 32 N.Y.S.2d 429 (1942), affirmed 288 N.Y. 685, 43 N.E.2d 82 (1942).

tort for fraud or other tortious conduct, instead of bringing an action based on breach of contract.[4] The present proceeding is not immune from the ban of the statute, because the theory upon which the plaintiffs seek to recover damages is placed on the defendant's negligent failure seasonably to inform the plaintiffs of his intended non-attendance at the wedding ceremony.

 Nor can the statute be avoided by an allegation to the effect that the

"defendant upon failing to notify plaintiffs of his failure to go to the wedding, maliciously and intentionally caused the infliction of mental suffering to the plaintiffs,

[and]

"as a result of the defendant's malicious and intentional infliction of mental suffering, the plaintiff [sic] suffered great humiliation, embarrassment, harm resulted to her [sic] reputation and she [sic] incurred great mental suffering."

Indeed, the same policy considerations which bar actions or proceedings to recover damages for breach of promise to marry in a procedural format of tort based on fraud or deceit apply with equal force to the so-called tort of intentional infliction of mental distress, so far as the same arises in the context of a breach of promise to marry. To hold otherwise would foster the evil which the Legislature sought to eliminate.[5]

The entry will be

Appeal denied.

Judgment affirmed.

WEATHERBEE, J., sat at argument and participated in consultation, but died prior to the preparation of the opinion.

DELAHANTY, J., sat at argument and conference, but did not otherwise participate.

POMEROY, WERNICK and ARCHIBALD, JJ., concurring.

---

**4.** The fact that the plaintiffs in this case were the parents of the jilted betrothed, i. e. third parties to the alleged marriage promise, has no effect on our decision. The statute does not merely prohibit the bringing of breach of promise actions by the immediate parties to the contract, but flatly provides that no such action or proceeding shall be maintained. Moreover, to allow third persons to bring breach of promise actions would enable prospective spouses to circumvent the statute by eliciting parents or other arguably injured parties to sue in their

place. See *Easley v. Neal,* 202 Misc. 554, 110 N.Y.S.2d 191 (1952).

**5.** Our present decision should be no indication one way or the other, whether, in a context other than one involving damages for breach of promise to marry, a cause of action exists in this State for the intentional, malicious or reckless infliction of severe emotional distress without resulting bodily injury, such as recognized in *Agis v. Howard Johnson Company,* 355 N.E.2d 315 (Mass.1976).